IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELIUS EDWARDS,<br><br>    Petitioner,<br><br>  vs.<br><br>ANTHONY P. KANE, Warden,<br><br>    Respondent. | No. C 05-2323 WHA (PR)<br><br>**ORDER DENYING HABEAS PETITION** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to a denial of parole by the governor.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**BACKGROUND**

Petitioner was convicted of second degree murder in 1987. He received a sentence of fifteen years to life in prison. In 2003 the Board of Prison Terms determined that he was suitable for parole and gave him a parole date, but the governor reversed that determination. He exhausted the sole claim remaining in the case by way of state habeas petitions.

///

///

**DISCUSSION**

**I.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## II.   ISSUES PRESENTED

Petitioner contends that the governor violated his due process rights in finding him unsuitable for parole based on facts that are more than ten years old. In his answer respondent contends, among other things, that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

### A.   Respondent's Contentions

#### 1.   Liberty Interest

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts.

3

1  *Id.* at 11–12.  The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S.
2  369 (1987).  There it held that a similar liberty interest was created even though the parole
3  board had great discretion.  *Id.* at 381.  For parole decisions, this mode of analysis survived the
4  Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515
5  U.S. 472 (1995).  *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect
6  the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole).  In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections.  *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole.  In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b).  Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole."  *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).  The scheme

4

requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument as to liberty interest is without merit.

### 2. **Due-Process Protections**

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to an opportunity to be heard and a statement of reasons for denial. That is, he contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

California law adds a layer of review by giving the governor the power to review the parole board's decision and to affirm, modify or reverse the decision, but only on the basis of the same factors the parole authority is required to consider. Cal. Penal Code § 3041.2; Cal. Const. art. V, § 8(b). The California Supreme Court has determined, as a matter of state law, that the governor's decision must also satisfy the "some evidence" standard. *In re Rosenkrantz*, 29 Cal. 4th 616, 676-77 (Cal. 2002). Because the governor's review is an extension of the

1  parole consideration process and the parole decision does not become final until such review
2  has occurred (or the time for it has passed), and in the absence of any argument from respondent
3  distinguishing the governor's decision from that of the Board for purposes of the "some
4  evidence" standard, the court concludes that due process requires that a denial of parole,
5  whether by the Board or the governor, be supported by at least "some evidence."

### B. Petitioner's Claim

As ground for federal habeas relief, petitioner contends that his due process rights were violated when the governor denied parole without "some evidence" to support the denial.

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

In several recent cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *Biggs*, 334 F.3d at 916-917. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

6

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *Id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded that relief for Irons was precluded by *Sass*. *See Irons*, 505 F.3d at 852-54. The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.*. Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

As to the offense itself, the governor relied on the facts recited by the court of appeal on direct review, which follow:

> [D]uring the evening on February 1, 1987, Wardell Jackson was at the home of his friend, Carline Baines. Twice during that evening, Darryl Bradley visited. On the first occasion, he had a pistol in his hand and was with Ronald Hosey. Approximately 25 to 30 minutes after Bradley first left, appellant arrived. "Somebody told [appellant] something to [the] effect" that Bradley had been by earlier looking for him. Appellant, Jackson and others present at Baines' house sat in the kitchen talking and smoking cocaine. Appellant got up quite af few times and looked out a window. Appellant stated that if Bradley came back, appellant may have "to take him."
> Later that evening, Bradley and Hosey returned to Baines' house. [f/n 1. When Bradley and Hosey returned, Jackson did not see a gun.] When Bradley

7

    and Hosey entered the kitchen, Bradley and appellant began to shout. Jackson saw appellant move his hand to his belt where his gun was located. Bradley called appellant a punk. Bradley and appellant were within a couple of feet of each other and Bradley was advancing upon appellant. [f/n 2. Jackson testified that he could not remember for sure that he told Detective Bernardo Lovato that he saw Bradley advancing on appellant.] Less than two seconds after Jackson saw appellant reach for his gun, Jackson turned to leave and heard a gunshot. Bradley died as a result of a gunshot would to the head fired at a maximum of 12 inches from the point of entry.

(Ans., Exh. 11 (opinion of court of appeal) at 3.)

    The governor's reversal of the Board's grant of parole was based on the heinous nature of the offense, petitioner's lengthy criminal record prior to the offense, his prison disciplinary violations prior to 1996, and the weakness of his parole plans (Exh. 4 at 1-2). As to the disciplinary reports, the governor noted that "[e]ven a life sentence for murder did not help Mr. Bradley [sic[1]] control his behavior as demonstrated by the five prison disciplinary rule violations he received." (*Id.* at 2). As to parole plans, the governor said: "Mr. Edwards has shaky parole plans that need development including either an offer of employment or a firm plan. Mr. Edwards states that he wants to be an entrepreneur, but he must have a job first. It is clear from his discussion of his drug dealing that he considered himself a businessman at the time of the offense. I have grave concern that with a family to care for and no job, Mr. Edwards will slip back into the only business he knows." (*Ibid.*) In his summary, the governor said: "Mr. Edwards is unquestionably an intelligent and ambitious man who has made significant strides in leaving behind a life of crime. He committed a heinous crime, however, which followed years of unremitting criminal behavior. More years of misconduct followed in prison. Mr. Edwards needs more time to prove he can maintain his gains and more definite parole plans before he can safely be released." (*Ibid.*)

    It is now established under California law that the task of the Board of Parole Hearings and the governor is to determine whether the prisoner would be a danger to society if he or she were paroled. *See In. re Lawrence*, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such

---

[1] This is a typographical error. Bradley was the victim.

8

1  a danger, not that there be some evidence of one or more of the factors that the regulations list
2  as factors to be considered in deciding whether to grant parole. *Id.* at 1205-06.

3  Although petitioner disagrees strongly with the governor's characterization of some of these facts, for the most part he does not dispute the facts themselves. For instance, there is no doubt he did lack a job offer, although he contends correctly that he was very successful in vocational training and that he should be able to earn a living (Exh. 3 at 40-41, 65-66). It also is undisputed that he had serious disciplinary violations after coming to prison, the last being in 1996 (*id.* at 40). Combined with the violent nature of the offense and the undoubted criminal life-style petitioner led at the time of the offense, this supports the governor's position that petitioner had not turned over a new leaf prior to 1996. The governor's decision here was in 2003, however, so petitioner had been well-behaved for seven years at the time of the decision. Whether this was long enough that it no longer suggests petitioner is a threat to society is quintessentially a matter of discretion, subject only to the constitutional "some evidence" requirement. This is a very close case, but although the disciplinary offenses were old enough that they were of marginal value, the Court cannot say that the state courts were unreasonable in deciding that "some evidence" supported the governor's decision, given the commitment offense and the violent drug-dealer life-style that gave rise to it, the disciplinary violations, and the lack of a firm job offer.[2] The petition will be denied.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September   24  , 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\EDWARDS323.RUL.wpd

---

[2] Petitioner has pending in this court a habeas petition directed to another reversal of the parole board by the governor, this one in 2007.

9